IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:21-cv-00259

| | |
|---|---|
| SHANEKA MANGUM, | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) **COMPLAINT**<br>) |
| PENNEY OPCO LLC | )<br>)<br>)<br>)<br>)<br>) |
| Defendant. | ) |

NOW COMES Plaintiff, Shaneka Mangum, by and through the undersigned counsel of record, complaining of Defendant, Penney OpCo LLC, alleges and says unto this Court:

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, which prohibits discrimination on the basis of race, color, and sex. Plaintiff, Shaneka Mangum, (hereinafter "Plaintiff"), brings this action to remedy discriminatory employment practices of her employer, Penney OpCo LLC (hereinafter "Defendant" or "JC Penny"). Plaintiff alleges that Defendant took adverse action against Plaintiff's employment and created a hostile work environment based on her sex and race/color. This Complaint sets out in detail the relevant instances of unlawful discrimination perpetrated by Defendant.

## PARTIES

1. Plaintiff is a United States Citizen and was employed by Defendant as a sales floor associate at JC Penny located at Cross Creek Mall in Fayetteville, North Carolina.

- 1 -

2. At all times relevant herein, Plaintiff is a citizen and resident of North Carolina.

3. At all times relevant herein, Plaintiff was an employee of Defendant within the meaning of 42 U.S.C. § 12111(4).

4. At all times relevant herein, Defendant was an employer of Plaintiff within the meaning of 42 U.S.C. § 12111(5).

5. Defendant is a limited liability company registered with the North Carolina Secretary of State and incorporated in Virginia with its principle place of business in Texas.

6. Defendant is subject to the personal jurisdiction of this court as they purposely availed themselves of conducting activities within the State of North Carolina. Defendant regularly conducts business and employs citizens of the State of North Carolina from their Fayetteville location and thereby meet the minimum contacts standard set forth in *International Shoe Co. v. Washington. See Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 744 (1984); 326 U.S. 310, 315 (1945)).

## STATEMENT OF FACTS

7. At all relevant times, Plaintiff is an African-American, dark-skinned female employed as a Sales Floor Associate in the Men's Department at Defendant's Cross Creek Mall location in Fayetteville, North Carolina.

8. Plaintiff was initially hired to work for Defendant on or about November 2016.

9. Plaintiff is a celibate woman who has previously been raped.

10. The employees and management at JC Penny are aware of that Plaintiff is a victim of sexual violence and her desire to remain single and refrain from sexual activity.

11. From the start, the employees of Defendant began referring to Plaintiff as a "bitch" and "hoe."

12. By the beginning of 2017, employees, such as the individual named Cecilia (last name unknown), would refer to Plaintiff as a "bitch" over the Public Address System (hereinafter "PA System").

13. In approximately 2017, Plaintiff reported to the store manager at the time, Mr. Walker, that she was experiencing harassment.

14. Following contact with Mr. Walker, Plaintiff spoke with Iva (last name unknown) with Defendant's Human Resources Department. During this discussion, Iva (last name unknown) stated that she would "see what she could do," however, nothing was done about the ongoing harassment directed towards Plaintiff.

15. In 2018, Plaintiff received a death threat from her store manager who stated, "if you don't have sex, we will kill you." Plaintiff reported this incident to Human Resources however, nothing was done about the continuing harassment.

16. In July 2019, Plaintiff again reported the ongoing harassment to Human Resources, however, her complaint was not addressed.

17. In 2019, Plaintiff initiated contact with the Equal Employment Opportunity Commission regarding the ongoing discrimination and harassment.

18. In December 2019, customers continuously referred to Plaintiff as racial slurs and called her an "it." Plaintiff's manager, Doris (last name unknown), overheard these communications, did not admonish nor address this conduct, and instead laughed at the insults being hurled at the Plaintiff.

19. On January 24, 2020, Plaintiff called the local authorities regarding concerns that Defendant's employees were attempting to sex traffic her.

20. On December 3, 2020, Plaintiff reported the continuing harassment to Christa (last name

unknown), with Human Resources, by telephone.

21. On December 14, 2020, Plaintiff reported the harassment by two coworkers, Donna (last name unknown) and Lisa (last name unknown), who were harassing Plaintiff and making comments about Plaintiff's genitals and sexual decisions, to Zach (last name unknown) (white) in Human Resources and Barbara Allgood (white), Manager.

22. Throughout her employment with Defendant, Plaintiff has had the following experiences:

    a. Plaintiff was and continues to be referred to as a racial slur. When Plaintiff does not react, Defendant's employees ask her why she is acting like she can't hear them;

    b. Employees often refer to Plaintiff's rape and laugh about her past trauma;

    c. Employees make the following sexual comments to plaintiff including, but not limited to: "she doesn't stick nothing up her," "she's got good pussy with it," and often discussing Plaintiff's genitals with each other and customers;

    d. Employees often attempt to set Plaintiff up with men, knowing that Plaintiff does not date and is celibate, and send men over to speak with her;

    e. Plaintiff has been hit and consistently touched at work, including on her shoulder and back, by Defendant's employees, including her previous manager Doris (last name unknown) although previously indicating to the staff that she does not wish to be touched.

23. Employees who have made discriminatory and harassing comments to Plaintiff include, but are not limited to:

    a. Retha (last name unknown)(white), cashier, often calls Plaintiff racial slurs and talks about Plaintiff's genitals;

    b. Reed Gaines (white), Store Manager, referred to Plaintiff as a racial slur;"

c. Pat Gallagher, Manager, made statements to Plaintiff that the employees will continue to mess with her because she does not have sex. Ms. Gallagher has also referred to Plaintiff as a racial slur in front of other employees.

d. Barbara Allgood (white), who has referred to Plaintiff as a racial slur;

e. Josie (last name unknown) (Hispanic), Plaintiff's supervisor, made comments about Plaintiff's sex life and sexual decisions;

f. Joey (last name unknown) (biracial), Manager Assistant, who often refers to Plaintiff as a racial slur;

g. Carolyn (last name unknown) (African-American), Manager, referred to Plaintiff as a racial slur over Defendant's PA System;

h. Cecilia (last name unknown) (Hispanic), Manager, referred to Plaintiff as a "bitch" over Defendant's PA System;

i. Tiffany Henderson (African-American), cashier, often refers to Plaintiff as a racial slur and makes comments about Plaintiff genitals and sex life.

24. Plaintiff has not received a raise in two years, while other similarly situated employees have received raises.

25. This conduct by Defendant's employees and management occurs during each of Plaintiff's shifts.

26. On March 17, 2021, Plaintiff was issued a Right to Sue letter by the Equal Employment Opportunity Commission. See attached Exhibit 1 – Mangum Right to Sue.

27. The conduct has continued since Plaintiff received the right to sue letter from the EEOC, specifically in May, 2021, the following acts occurred:

a. Employees engaged in conversations with customers, in front of or within hearing

distance from Plaintiff, regarding her previous rape and decision to be celibate.

b. An employee named Shan Ann, cashier, stated to Plaintiff that the employees joke about her rape and celibacy because "you [do] not have sex."

c. An employee named Donald (last name unknown), cashier, referred to Plaintiff as a racial slur, staking that "they are going to wake the [racial slur] up." Then began laughing when a customer arrived and stated, "they keep calling her a [racial slur]."

d. Employees Dexter (last name unknown) and Donald (last name unknown) called Plaintiff racial slurs while she attempted to assist a white male customer. When Plaintiff did not respond, these individuals stated, "she acts like she doesn't hear it," at which point Plaintiff stated, "I have nothing further to say."

28. To date, Plaintiff continues to endure verbal harassment during each shift she works at Defendant's Fayetteville location.

**FIRST CAUSE OF ACTION**
(Sex Discrimination)

29. The allegation set forth in paragraphs 1 through 28 are realleged and incorporated by reference as if fully set forth herein.

30. Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of . . . sex . . . ." 42 U.S.C. § 2000e-(2)(a)(1).

31. To establish a *prima facie* case of sex discrimination, Plaintiff must show that (1) she is a member of a protected class; (2) she suffered adverse employment action; (3) she was performing her job duties at a level that met her employer's legitimate expectations at the time of the adverse employment action; and (4) was replaced by or treated less favorably than someone outside her protected class. *See McDonnell Douglas Corp. v. Green,* 411

U.S. 792, 802 (1973).

32. An adverse employment action is a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371, 375 (4th Cir. 2004).

33. Plaintiff is a member of a protected class as she is female and is a victim of sexual violence.

34. Plaintiff suffered adverse employment action as the consistent harassment has created an unbearable working condition for the Plaintiff. Furthermore, Plaintiff has not received bonuses or raises in approximately two years.

35. Plaintiff was meeting her employer's expectations at the time of the adverse action, as she was rated as above average to superior on her performance reviews and has had no disciplinary actions during her employment with Defendants.

36. Plaintiff was treated less favorably than similarly situated employees as Plaintiff endures constant ridicule and harassment that other similarly situated employees do not have to face on a daily basis, and other similarly situated employees have received bonuses and raises in the last two years, while Plaintiff has not.

## SECOND CAUSE OF ACTION
(Race/Color Discrimination)

37. The allegations set forth in paragraphs one through thirty-six are realleged and incorporated by reference as if fully set forth herein.

38. To establish a *prima facie* case of race discrimination, Plaintiff must establish the following elements: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010) (*citing White v. BFI Waste Servs., LLC,* 375 F.3d 288,

295 (4th Cir. 2004)).

39. Plaintiff is a member of a protected class as she is dark-skinned, African American.

40. Plaintiff had satisfactory job performance as she was rated as above average to superior on her performance reviews and has had no disciplinary actions during her employment with Defendants.

41. Defendants took adverse employment action against Plaintiff in that she receives unequal pay compared to the white, Hispanic, and biracial employees in the same or similar position as her. Plaintiff also has not received a raise in two years, while other individuals in the same or similar position as her have received a raise during this timeframe. Furthermore, Plaintiff faces consistent ridicule and is called racial slurs, while other employees do not endure the same treatment.

### THIRD CAUSE OF ACTION
(Hostile Work Environment)

42. The allegations set forth in paragraph 1 through 41 are realleged and incorporated by reference as if fully set forth herein.

43. "To establish a *prima facie* claim for a hostile work environment, a plaintiff must show (1) unwelcome conduct; (2) based on plaintiff's [protected class]; (3) sufficiently pervasive or severe to alter the condition of employment and to create a hostile work environment; and (4) some basis for imputing liability to the employer." *See Matvia v. Baldhead Island Mgmt., Inc.,* 259 F.3d 261, 266 (4th Cir. 2001).

44. Under *Faragher v. City of Boca Raton,* "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." 524 U.S. 775, 777 (1998).

45. In addition to the actions of employees, an employer can be liable for a hostile work environment that results from the action of customers. *See e.g., Dunn v. Washington Cty. Hosp.,* 429 F.3d 689 (7th Cir. 2005); *Lockard v. Pizza Hut, Inc.,* 162 F.3d 1062 (10th Cir. 1998); *Watson v. Blue Circle inc.,* 324 F.3d 1252 (9th Cir. 2003).

46. Plaintiff was subject to unwelcome conduct based on her sex (female), race (African-American), and color (dark-skinned) as she is consistently called racial slurs and endures berating by employees, management, and customers who make derogatory statements about her sex life and genitals. This conduct has occurred almost consistently for every shift that Plaintiff has worked since she began her employ in 2016.

47. The conduct is sufficiently pervasive and sever to alter the condition of employment and to create a hostile work environment as Plaintiff is targeted almost every shift and is singled out by multiple employees. These unlawful comments are made in front of and to customers and other employees, without any regard from Plaintiff's privacy and the affect they may have on Plaintiff.

48. Defendants are liable as Plaintiff has complained to management and human resources on numerous occasions throughout her employ with JC Penny, however, Defendants has taken no steps to address Plaintiffs concerns. In addition, many of Defendant's supervisors and management members have actively participated in the creation of a hostile work environment, making the employer directly liable for their acts.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court:

A. Order Defendant to make Plaintiff whole by providing appropriate monetary relief in the amount of $100,000.00;

B. Order Defendant to expunge Plaintiff's employment record as necessary to eradicate the effects of Defendant's discriminatory practices;

C. Order Defendant to make Plaintiff whole by providing compensation for pecuniary losses resulting from the unlawful employment practices described herein;

D. Grant such relief as the Court deems necessary and proper in the public interest; and

E. Award Plaintiff her attorney's fees and costs of this action pursuant to Title VII of the Civil Rights Act of 1964.

## **JURY TRIAL DEMAND**

Plaintiff requests a jury trial on all questions of facts raised by this Complaint.

Respectfully submitted this, the 14th day of June, 2021.

                MCLAWHORN & RUSSELL PLLC

                /s/Christine D. Kidd
                Christine D. Kidd
                N.C. State Bar No. 56518
                Christine@mclawfirmnc.com
                McLawhorn & Russell, PLLC
                8801 Fast Park Drive, Suite 307
                Raleigh, NC 27617
                Telephone: (919) 364-8975
                Facsimile: (919) 646-4032
                *Attorney for Plaintiff*